J-A14010-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| ROBERT E. LUPTAK, JR. | : | |
| Appellant | : | No. 1481 WDA 2019 |

Appeal from the Judgment of Sentence Entered June 30, 2017
In the Court of Common Pleas of Lawrence County Criminal Division at
No(s): CP-37-CR-0001073-2014

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| ROBERT E. LUPTAK, JR. | : | |
| Appellant | : | No. 1482 WDA 2019 |

Appeal from the Judgment of Sentence Entered June 30, 2017
In the Court of Common Pleas of Lawrence County Criminal Division at
No(s): CP-37-CR-0000902-2015

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| ROBERT E. LUPTAK, JR. | : | |
| Appellant | : | No. 1483 WDA 2019 |

Appeal from the Judgment of Sentence Entered June 30, 2017
In the Court of Common Pleas of Lawrence County Criminal Division at
No(s): CP-37-CR-0000512-2015

J-A14010-20

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
ROBERT E. LUPTAK, JR. :
:
Appellant : No. 1484 WDA 2019

Appeal from the Judgment of Sentence Entered June 30, 2017
In the Court of Common Pleas of Lawrence County Criminal Division at
No(s): CP-37-CR-0001075-2014

BEFORE: SHOGAN, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.: FILED OCTOBER 23, 2020

In these consolidated appeals, Appellant, Robert E. Luptak, Jr., appeals

nunc pro tunc from the judgments of sentence entered on June 30, 2017, in

the Lawrence County Court of Common Pleas.[1] After review, we affirm.

The record reveals that in the summer of 2014, Kellie Mars agreed to

work as an informant for the New Castle Police Department and the Lawrence

County Drug Task Force. N.T., 4/18/17, at 40-41. Ms. Mars testified that she

_____

[1] Appellant filed a separate notice of appeal at each trial court docket number, and each appeal was assigned a Superior Court docket number. Notices of Appeal, 9/27/19; Notice of Appeal Docketing Letters, 10/3/19. On October 17, 2019, this Court issued an order at each Superior Court docket number directing Appellant to show cause why the four appeals should not be consolidated. Orders, 10/17/19. In the orders, we noted that these matters were consolidated and disposed of concurrently in the trial court. Id. On October 21, 2019, Appellant filed four responses stating that he had no objection to consolidation. Responses, 10/21/19. On October 28, 2019, this Court sua sponte consolidated Appellant's appeals. Order, 10/28/19.

- 2 -

made five controlled purchases of oxycodone from Appellant. Id. at 44. As a result of these controlled purchases, New Castle Police obtained a warrant for Appellant's arrest and a search warrant for Appellant's residence. N.T., 4/21/17, at 57-58. On October 23, 2014, the police executed the search warrant. Id. at 59. When the police arrived at Appellant's house, Appellant walked outside and was taken into custody. Id. at 60. During their search of Appellant's house, the police discovered and seized cocaine, oxycodone pills, marijuana, steroid tablets, handguns, rifles, shotguns, a compound bow, a crossbow, other bows, more than $15,000 in United States currency, and other items that were suspected "spoils of criminal activity." Id. at 63-94; Trial Court Opinion, 11/14/19, at 6. Some of the seized items were not related to the search warrant, but they were later determined to be stolen. Trial Court Opinion, 11/14/19, at 6. The police subsequently secured a second search warrant based on the information revealing that the seized items were stolen. Id.

The Commonwealth charged Appellant, inter alia, with numerous counts of possession of a controlled substance with intent to deliver ("PWID"), possession of a controlled substance (possession), criminal use of a

communication facility, and receiving stolen property ("RSP").[2] Criminal Informations, 11/26/14; 11/26/14; 6/30/15; and 3/30/17.[3]

On March 31, 2017, Appellant filed a suppression motion at each trial court docket number. In his suppression motion, Appellant alleged that he was not provided Miranda[4] warnings prior to making oral statements to police, the search exceeded the scope of the first search warrant, the search warrants were not supported by probable cause, and he requested suppression of all seized property. On April 18, 2017, the trial court denied Appellant's motion, and the case proceeded to a jury trial.

Following trial, the jury found Appellant guilty of all of the charged offenses except one count of possessing drug paraphernalia. N.T., 6/28/17, at 2. The trial court sentenced Appellant to an aggregate sentence of eleven and one-half to twenty-three years of incarceration. Id. at 37. However, the trial court stated that Appellant was eligible under the recidivism risk reduction incentive ("RRRI"), 61 Pa.C.S. § 4501-4512. Id. Thus, if Appellant complied

---

[2] 35 P.S. § 780-113(a)(30), 35 P.S. § 780-113(a)(16), 18 Pa.C.S. § 7512, and 18 Pa.C.S. § 3925(a), respectively.

[3] Prior to consolidation, a criminal information was filed at each trial court docket number.

[4] Miranda v. Arizona, 384 U.S. 436 (1966). Pursuant to Miranda, a criminal suspect must be advised prior to interrogation that he has the right to remain silent, anything he says can be used against him in a court of law, he has the right to counsel, and if he cannot afford counsel, one will be appointed to represent him. Commonwealth v. Yandamuri, 159 A.3d 503, 510 (Pa. 2017).

with the terms of the RRRI, his minimum sentence could be reduced from eleven and one-half to "8.916 years" years of incarceration. Id.

On July 7, 2017, Appellant filed a post-sentence motion. On August 29, 2017, the trial court entered an amended sentencing order noting a mathematical error and stating that Appellant's RRRI minimum sentence was nine years and seven months. Amended Sentencing Order, 8/29/17, at ¶3.[5] On October 31, 2017, the trial court amended Appellant's written sentencing order with respect to the sentence imposed at trial court docket number CP-37-CR-0000512-2015. Order, 10/31/17.[6] The court clarified that one count of PWID was mislabeled on the written order as a possession charge, and the court amended the written sentencing order to conform with the criminal information and the sentencing order provided at the time of sentencing. Id. On November 6, 2017, the trial court then denied Appellant's post-sentence motion. Appellant did not file a direct appeal.

On June 22, 2018, Appellant filed a timely pro se petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546, and the

_____

[5] Although the trial court corrected the sentencing order beyond the thirty days provided by 42 Pa.C.S. § 5505, we note that no one has challenged the correction of this facial error. Moreover, our Supreme Court has held that trial courts retain the authority to correct patent errors beyond the thirty days provided in Section 5505. Commonwealth v. Holmes, 933 A.2d 57, 67 (Pa. 2007). Because there was no objection to the correction of the sentencing order, and because we conclude it does not impact the legality of Appellant's sentence or our jurisdiction, we continue with our disposition.

[6] See footnote 5.

PCRA court appointed counsel. Order, 10/4/18. Appellant subsequently petitioned for the reinstatement of his direct-appeal rights, which the PCRA court reinstated nunc pro tunc on February 28, 2019. On March 12, 2019, Appellant filed his nunc pro tunc appeal to this Court. We quashed Appellant's appeal pursuant to Commonwealth v. Walker, 185 A.3d 969 (Pa. 2018), because Appellant filed only one notice of appeal from the three trial court dockets. Commonwealth v. Luptak, 402 WDA 2019, unpublished judgment order (Pa. Super. filed September 4, 2019). However, this Court noted that it was quashing Appellant's appeal without prejudice to Appellant's rights to seek reinstatement of his appellate rights under the PCRA. Id. at 3. On September 19, 2019, Appellant filed a second PCRA petition seeking the restoration of his direct appeal rights, which was not opposed by the Commonwealth, and the trial court granted the petition. Order, 9/19/19. Thereafter, Appellant filed a separate notice of appeal at each trial court docket. Both the trial court and Appellant complied with Pa.R.A.P. 1925.[7]

On appeal, Appellant raises four issues:

_____

[7] Appellant filed a Pa.R.A.P. 1925(b) statement on March 26, 2019, and filed an Amended Pa.R.A.P. 1925(b) statement on April 2, 2019. As noted, after this Court quashed the first appeal, the trial court again reinstated Appellant's direct appeal rights. Appellant then filed separate notices of appeal on September 27, 2019. The trial court did not order Appellant to file a new Pa.R.A.P. 1925(b) statement, and instead relied on the March 26, 2019 Pa.R.A.P. 1925(b) statement and the April 2, 2019 Amended Pa.R.A.P. 1925(b) statement that Appellant filed in his initial nunc pro tunc appeal. Trial Court Opinion, 11/14/19, at 3-4.

I.      Whether the trial court erred and abused its discretion in denying Appellant's post-sentence motions, by finding that the jury's verdict was based on evidence sufficient to sustain his convictions beyond a reasonable doubt?

II.      Whether the trial court erred and abused its discretion in denying the Appellant's motion to sup[p]ress evidence related to two search warrants as well as an alleged statement or statements made by Appellant after an alleged waiver of his Miranda rights?

III.      Whether the trial court erred and abused its discretion in denying Appellant's post-sentence motions, by finding that the jury's verdict was not against the weight of evidence?

IV.      Whether the trial court's imposition of its sentences upon Appellant raise a substantial question, as the reasons for the same were not properly articulated, were in error, an abuse of discretion, and unreasonable and manifestly excessive?

Appellant's Brief at 11-12 (full capitalization omitted).[8]

In his first issue, Appellant purports to challenge the sufficiency of the evidence. Appellant's Brief at 38. However, both the trial court and the Commonwealth contend that Appellant waived this issue. Trial Court Opinion, 11/14/19, at 13; Commonwealth's Brief at 4. After review, we agree that Appellant waived his challenge to the sufficiency of the evidence.

Our Court has held:

If Appellant wants to preserve a claim that the evidence was insufficient, then [his Pa.R.A.P.] 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the element or elements

---

[8]   We have renumbered Appellant's issues so that we may first address Appellant's challenge to the sufficiency of the evidence. We do so "[b]ecause a successful sufficiency of the evidence claim warrants discharge on the pertinent crime[.]" Commonwealth v. Toritto, 67 A.3d 29, 33 (Pa. Super. 2013) (en banc).

- 7 -

on appeal. [Where a Pa.R.A.P.] 1925(b) statement does not specify the allegedly unproven elements[,] … the sufficiency issue is waived [on appeal].

Commonwealth v. Williams, 959 A.2d 1252, 1257 (Pa. Super. 2008), quoting Commonwealth v. Flores, 921 A.2d 517, 522-523 (Pa. Super. 2007).

In Appellant's Pa.R.A.P. 1925(b) statement and his Amended Pa.R.A.P. 1925(b) statement, he merely alleged in boilerplate fashion that the evidence was insufficient to sustain all of his convictions. Pa.R.A.P. 1925(b) Statement, 3/26/19, at ¶3; Amended Pa.R.A.P. 1925(b) Statement, 4/2/19, at ¶3. Appellant failed to specify any element upon which the evidence was insufficient. Therefore, Appellant's challenge to the sufficiency of the evidence is waived on appeal. Williams, 959 A.2d at 1257.

Next, Appellant presents two challenges to the trial court's denial of his suppression motion. He first asserts that the police seized personal property from his house that was outside the scope of the first search warrant. Appellant's Brief at 22-31. Secondly, Appellant avers that the police questioned him without informing him of his rights as required by Miranda. Id. at 31-38.

We review the denial of a motion to suppress under the following parameters:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a

suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. … Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

Commonwealth v. Eichinger, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." Commonwealth v. Gallagher, 896 A.2d 583, 585 (Pa. Super. 2006). Moreover, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. In re L.J., 79 A.3d 1073, 1087 (Pa. 2013).

Appellant asserts that the first search warrant permitted the police to enter his house and look for items related to drug trafficking and the drug trade. Appellant's Brief at 23. However, he claims that when the police seized cross bows, tools, personal items, and other property which had no "indicia of an incriminating nature," the officers exceeded the scope of the first search warrant. Id. at 23-24. After review, we conclude that no relief is due.

The trial court resolved this issue applying the rules of "inevitable discovery" and "plain view," and it addressed Appellant's claim of error as follows:

> [Appellant's] first-stated error complained of on appeal is that this court erred when it admitted evidence obtained based on a sealed search warrant issued on October 22, 2014, and executed on [Appellant's] home on October 23, 2014.

On October 22, 2014, the Commonwealth obtained a search warrant to search [Appellant's] residence at 218 W. Winter Avenue, New Castle, Lawrence County Pennsylvania. On October 23, 2014, at 1:30 PM, the warrant was executed.

During the execution of the warrant, Officer Joshua Covert of the New Castle Police Department identified a bow that he reported stolen from his vehicle. Numerous tools and other items which were not listed as items to be seized were seized from 218 W. Winter Avenue as spoils of criminal activity.

Based on a review of the October 22nd Warrant, many of the items seized during the execution of the first warrant did not fall into any of the ten stated categories of items to be searched and seized pursuant to the first warrant.

Of the ten authorized subjects of the search, the closest provision to the items seized is the ninth provision of the warrant, which allows for the seizure of "receipts of items evidencing the expenditure of the proceeds of drug distribution…[.]" A precise reading of this provision does not allow for the seizure of the actual items evidencing the expenditure of the proceeds of drug distribution. Only the receipts of these items were authorized for seizure.

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures, thereby ensuring the "right of each individual to be let alone." Com. v. Campbell, 862 A.2d 659[, 663] (Pa. Super. 2004).

Normally, the search being outside the scope authorized by the warrant would trigger exclusion of the evidence. In the present case however, the doctrines of plain view and inevitable discovery apply.

"The scope of a lawful search pursuant to a warrant is defined by the object of the search and the places in which there is probable cause to believe that it may be found." Com. v. Taylor, 771 A.2d 1261, 1265-66 (Pa. 2001) (citations and quotations omitted). "It is permissible to seize things other than those described in the search warrant if they have a reasonable relation to the purpose of the search["] and are the fruits of crime, such as stolen property.[] Com v. Gannon, 454 A.2d 561, 565 (Pa.

Super. 1982) (notations omitted). Further, a warrant is not necessary where evidence comes to an officer's "attention by virtue of being in plain sight." Com. v. Bowers, 274 A.2d 546, 547 (Pa. Super. 1970) (citations omitted); see also Com. v. Anderson, 40 A.3d 1245, 1248 (Pa. Super. 2012).

The plain view doctrine applies if 1) police did not violate the Fourth Amendment during the course of their arrival at the location where they viewed the item in question; 2) the item was not obscured and could be seen plainly from that location; 3) the incriminating nature of the item was readily apparent; and 4) police had the lawful right to access the item. Thus, police executing a valid search warrant may seize items not listed in the warrant if their incriminating nature is immediately apparent. Com. v. Harvard, 64 A.3d 690, 698 (Pa. Super. 2013).

Officer Covert's bow falls under the plain view exception.

A significant number of tools and other items were seized from the home whereby the incriminating nature of the items was not immediately apparent.

Upon the completion of the execution of the warrant, Corporal Richard Conti checked with the New Castle Police Department Detective Bureau and reviewed stolen goods reports. Corporal Conti in his application for a warrant on October 24, 2014, noted many of the items remaining in the residence matched the descriptions of items in the theft reports.

Evidence which would have been inevitably discovered is sufficiently purged of the original illegality to allow admission of the evidence. [Com. v. Gonzalez, 979 A.2d 879, 890 (Pa. Super. 2009).] Implicit in this doctrine is the fact that the evidence would have been discovered despite the initial illegality. [Id.] If the prosecution can establish by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means, the evidence is admissible. [Id.] "The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct." [Id. at] 890 (Pa. Super. 2009) (quoting Nix v. Williams, 467 U.S. 431, 444 n. 4 (1984).

The items seized prior to the execution of the second warrant were outside the scope of the first warrant. However, on

the basis of the discovery of Officer Covert's stolen bow inside 218 W. Winter Avenue, Corporal Conti or another officer would more likely than not have still reviewed theft reports for items matching the descriptions of items found in the home. In addition, during the interrogation of [Appellant], which occurred prior to the execution of the second warrant, [Appellant] was questioned about his practices regarding purchasing these tools. When asked if [Appellant] had exchanged drugs for tools, he told the interviewing officers he did.[2]

> [2] Commonwealth's Exhibit 2, Pretrial hearing April 10, 2017.

Lastly, the mere oversight of excluding derivative contraband from the listed scope of the warrant is not the sort of police misconduct the exclusionary rule is designed to protect against. The exclusionary rule is aimed at official misconduct. Com. v. Corley, 491 A.2d 829, 834 (Pa. 1985).

It was inevitable that the items improperly seized during the execution of the first warrant would have been properly seized during the execution of the second warrant based on the probable cause gained through the discovery of Officer Covert's bow as well as the review of theft reports and the probable cause the police already had in order to receive the first warrant.

Trial Court Opinion, 11/14/19, at 6-9.

We agree with the trial court. The police executed a legal search warrant and lawfully entered Appellant's house. Once inside, the officers seized items that were enumerated in the search warrant and seized items that they suspected were stolen but were outside the scope of the warrant. The officers were under no obligation to ignore an item in plain sight if its criminal nature was immediately apparent. Moreover, because the police suspected that the items discovered in Appellant's house were the fruit of a criminal enterprise, they reviewed the stolen property reports, confirmed that the items outside

the scope of the warrant were in fact stolen, and on this basis, executed the second search warrant. Thus, even if the criminal nature of an item, which was in plain sight, was not immediately apparent, the items would have been discovered inevitably after officers reviewed the stolen property reports. For these reasons, we conclude that the seized items that were outside the scope of the initial warrant inevitably would have been discovered, and we discern no error in the trial court denying Appellant's suppression motion based on the doctrines of inevitable discovery and plain sight. Bowers, 274 A.2d at 547; Harvard, 64 A.3d at 698; and Gonzalez, 979 A.2d at 890.

Next, Appellant asserts that the trial court should have suppressed statements Appellant made to police because the officers did not provide Appellant his Miranda warnings. Appellant's Brief at 31. After review, we discern no error.

Appellant's argument is based on his assertion that his testimony from the suppression hearing was more credible than the testimony given by the police officers. Appellant's Brief at 31-37. However, as set forth above, the credibility of the witnesses testifying at the suppression hearing and the weight to be given their testimony is left to the trial court as the factfinder. Gallagher, 896 A.2d at 585. The trial court disposed of this issue as follows:

> By Order of April 18, 2017, this court declined to suppress statements made by [Appellant] to police on October 23, 2014, as it found [Appellant] had waived his Miranda rights.
>
> The issue of argument came down to the fact that the Miranda waiver form was initialed 'yes' to the question indicating

whether [Appellant] wished to make a statement.  No written statement was ultimately made.

The Commonwealth offered the testimony of Detective Thomas Costa and Corporal Richard Conti who were present for the interrogation.  The Officers testified they spoke with [Appellant], and after some preliminary conversation where the investigation was not discussed, they presented him with a Miranda waiver form and determined if he wished to make a statement.  The Officers testified [Appellant] did wish to make a statement, but he only wished to make an oral statement, which was why the form was checked yes but was not accompanied by a written statement.

According to [Appellant], the District Attorney led the interrogation rather than Detective Costa and Officer Conti.  [Appellant] claimed he was not made aware of his right to remain silent during the interrogation and was presented with the Miranda waiver form only after he made statements to police.  When [Appellant] was given the Miranda waiver form, he was told he had already given a statement, and he might as well initial the question stated he desired to give a statement because he already gave one.  [Appellant] then initialed the line saying he desired to make a statement.

This court, sitting as the suppression court, found the Officers credible due to the granular detail of which appeared in each officer's testimony despite neither seeing the testimony of the other.

This court did not find the testimony of [Appellant] credible.

Where a motion to suppress has been filed, the, burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible.  Com. v. Lindblom, 854 A.2d 604, 605 (Pa. Super. 2004).  The role of the suppression court includes the responsibility of making credibility determinations.  Com. v. Gallagher, 896 A.2d 583, 585 (Pa. Super. 2006).

The question of the admission of the post-waiver statements is solely one of credibility.  This court found the testimony of Detective Cota and Officer Conti credible, and did not find [Appellant] credible.  The Miranda waiver form was initialed by

[Appellant] next to the statement: "I wish to make a statement."[1] This determination directly results in the conclusion [Appellant] waived his Miranda rights. As such, the statements made by [Appellant] to the police are admissible.

[1] Commonwealth's Exhibit 3, Pretrial hearing April 10, 2017.

Trial Court Opinion, 11/14/19, at 4-6.

As we stated previously, it was within the sole province of the trial court to determine the credibility of the witnesses and the weight to be given their testimony. Gallagher, 896 A.2d at 585. At the suppression hearing, the trial court heard testimony from Detective Costa, Corporal Conti, and Appellant. The trial court concluded that Detective Costa and Corporal Conti testified credibly concerning Appellant's waiver of his Miranda rights and his willingness to provide a statement. Conversely, the trial court did not find Appellant's version of events credible. Accordingly, pursuant to our scope and standard of review, we discern no error in the trial court's finding that Appellant waived his right to remain silent and denying Appellant's suppression motion.

In his third issue, Appellant avers that the trial court erred in denying Appellant's post-sentence motion for a new trial in which he asserted that the verdict was against the weight of evidence. Appellant's Brief at 45; Post-sentence Motion, 7/7/17, at ¶¶12-13. After review, we conclude that no relief is due.

Our Court has held that "[a] motion for [a] new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is

sufficient evidence to sustain the verdict." Commonwealth v. Rayner, 153 A.3d 1049, 1054 (Pa. Super. 2016) (quoting Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000)). Our Supreme Court has described the standard applied to a weight-of-the-evidence challenge as follows:

> The decision to grant or deny a motion for a new trial based upon a claim that the verdict is against the weight of the evidence is within the sound discretion of the trial court. Thus, "the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider de novo the underlying question of the weight of the evidence." An appellate court may not overturn the trial court's decision unless the trial court "palpably abused its discretion in ruling on the weight claim." Further, in reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is "so contrary to the evidence as to shock one's sense of justice."

Commonwealth v. Cash, 137 A.3d 1262, 1270 (Pa. 2016) (internal citations omitted).

A trial court's determination that the verdict was not against the weight of the evidence is "[o]ne of the least assailable reasons" for denying a new trial. Commonwealth v. Colon-Plaza, 136 A.3d 521, 529 (Pa. Super. 2016) (quoting Commonwealth v. Clay, 64 A.3d 1049, 1055 (Pa. 2013)). A verdict is against the weight of the evidence where "certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." Commonwealth v. Lyons, 833 A.2d 245, 258 (Pa. Super. 2003) (quoting Widmer, 744 A.2d at 751-752)). However, "we do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence.... Instead, this Court determines whether the

trial court abused its discretion in reaching whatever decision it made on the motion[.]" Commonwealth v. Ferguson, 107 A.3d 206, 213 (Pa. Super. 2015) (citation omitted) (emphasis added).

Appellant's argument on this issue is lacking. Appellant dedicates four pages of his brief to setting forth the standards for a litigant to preserve and for the courts to decide a challenge to the weight of the evidence. Appellant's Brief at 45-48. He then provides one paragraph of argument. Id. at 49. The crux of Appellant's challenge is that the testimony provided by the defense witnesses, when considered in conjunction with Appellant's cross-examination of the Commonwealth's witnesses, establishes that the verdict was against the weight of the evidence. Id. However, this Court will not reweigh the testimony, and we will not substitute our judgment for that of the factfinder; the jury is free to believe some, all, or none of the evidence presented and to determine the credibility of the witnesses at trial. Commonwealth v. Windslowe, 158 A.3d 698, 712 (Pa. Super. 2017) (citation omitted). The jury chose to credit the testimony of the Commonwealth's witnesses, as it was free to do. Id. After review, there is nothing about the trial court's denial of Appellant's post-sentence motion that leads us to conclude that there was an abuse of discretion. Accordingly, Appellant is entitled to no relief with respect to his challenge to the weight of the evidence.

In his final issue, Appellant asserts that the trial court abused its discretion in imposing Appellant's sentence. Appellant argues that his

sentence was unreasonable and manifestly excessive, and that the trial court failed to provide the reasons for the sentence it imposed. Appellant's Brief at 49-50.

Appellant's issue presents a challenge to the discretionary aspects of his sentence. It is well settled that a challenge to the discretionary aspects of a sentence is a petition for permission to appeal, as the right to pursue such a claim is not absolute. Commonwealth v. Treadway, 104 A.3d 597, 599 (Pa. Super. 2014). "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence," by (1) preserving the issue in the court below, (2) filing a timely notice of appeal, (3) including a Rule 2119(f) statement, and (4) raising a substantial question for our review. Commonwealth v. Tejada, 107 A.3d 788, 797 (Pa. Super. 2015) (citation omitted); Commonwealth v. Austin, 66 A.3d 798, 808 (Pa. Super. 2013).

In the instant case, Appellant preserved his challenge to the discretionary aspects of his sentence in his post-sentence motion, Post-sentence Motion, 7/7/17, at ¶¶14-15, and as we discussed above, Appellant filed a nunc pro tunc appeal. Notices of Appeal, 9/27/19. Moreover, Appellant included in his brief a concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). Appellant's Brief at 7-11. Therefore, we must determine whether Appellant has raised a substantial question.

The determination of whether there is a substantial question is made on a case-by-case basis, and this Court will allow the appeal only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code, or (2) contrary to the fundamental norms which underlie the sentencing process. Commonwealth v. Caldwell, 117 A.3d 763, 768 (Pa. Super. 2015). "Our inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." Commonwealth v. Knox, 165 A.3d 925, 929 (Pa. Super. 2017) (quoting Commonwealth v. Tirado, 870 A.2d 362, 365 (Pa. Super. 2005)).

Appellant alleges that although the individual sentences were in the standard range of the Sentencing Guidelines, the aggregate sentence of eleven and one-half to twenty-three years of incarceration was unreasonable and manifestly excessive due to the consecutive nature of the sentences imposed. Appellant's Brief at 7-11.[9] We conclude that Appellant has

_____

[9] Appellant also presents a novel argument that "the Commonwealth could have satisfied its prosecutorial goal with two controlled buys, instead of five controlled buys." Appellant's Brief at 52-53, 55. Appellant claims that charging and sentencing Appellant for five separate criminal transactions was excessive. Id. at 55-56. However, Appellant has not cited, nor does our own research reveal, any authority that addresses the duration of a criminal investigation as a sentencing issue. Whether the Commonwealth could have achieved its prosecutorial goals by arresting Appellant after two controlled buys is not properly before this Court. Appellant did not challenge the number

presented a substantial question. See Commonwealth v. Dodge, 77 A.3d 1263, 1270 (Pa. Super. 2013) ("[A] defendant may raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence[.]"). Accordingly, we conclude that Appellant satisfied the four-part test set forth in Tejada, and we may address the merits of Appellant's challenge to the discretionary aspects of his sentence.[10]

_____

of arrests or counts in the criminal information in his omnibus pretrial motion pursuant to Pa.R.Crim.P. 578. Appellant's cases proceeded to trial, he was convicted, and he was sentenced on the crimes set forth in the criminal informations arising from the five controlled buys and search of his home. Any challenge to the number of controlled buys or the contents of the information is waived due to Appellant's failure to raise it in the trial court. See Pa.R.A.P. 302(a) ("Issues not raised in the [trial] court are waived and cannot be raised for the first time on appeal"); see also Commonwealth v. Jackson, 215 A.3d 972, 977-978 (Pa. Super. 2019) (holding appellant waived challenge to amendment to criminal information where he failed to articulate specific objection at appropriate stage of proceedings before trial court).

[10] The Commonwealth appears to argue that Appellant was required to file a petition for allowance of appeal pursuant to 42 Pa.C.S. § 9781 that was separate from the appeal generally. Commonwealth's Brief at 10-11. This is inaccurate, and we note the following:

> Where a challenge is raised to the appropriateness of the discretionary aspects of a sentence, the "petition for allowance of appeal" specified in 42 Pa.C.S. § 9781(b) is deferred until the briefing stage, and the appeal is commenced by filing a notice of appeal pursuant to Chapter 9 rather than a petition for allowance of appeal pursuant to Chapter 11.

"[S]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." Commonwealth v. Sheller, 961 A.2d 187, 190 (Pa. Super. 2008). An abuse of discretion is not merely an error in judgment; rather, an appellant must establish that the trial court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or reached a manifestly unreasonable decision. Id.

The trial court sentenced Appellant as follows:

Trial court docket number CP-37-CR-0001073-2014: Count 1 (PWID), nine to eighteen months of incarceration; and Count 2 (possession), merges/no further penalty. N.T., 6/28/17, at 31-32.

Trial court docket number CP-37-CR-0001075-2014: Count 1 (RSP), three to six months of incarceration. N.T., 6/28/17, at 32. This sentence was ordered to be served consecutively to the sentence at trial court docket number CP-37-CR-0001073-2014. Id. at 32-33.

Trial court docket number CP-37-CR-0000512-2015: Count 1 (PWID), no further penalty; Count 2 (PWID), nine to eighteen months of incarceration; Count 3 (RSP), twelve to twenty-four months of incarceration; Count 4 (RSP), twelve to twenty-four months of incarceration; Count 5 (RSP),

_____

Pa.R.A.P. 2119, Note. As stated above, in order to petition this Court for allowance of appeal from the discretionary aspects of one's sentence, an appellant must comply with the factors set forth in Tejada, 107 A.3d at 797. An additional and separate petition is not required.

three to six months of incarceration; Count 6 (RSP), three to six months of incarceration; Count 7 (possession), merges/no further penalty; Count 8 (possession), merges/no further penalty; Count 9 (possession), merges/no further penalty; Count 10 (possession), merges/no further penalty; Count 12[11] (PWID), forty-two to eighty-four months of incarceration; Count 13 (possession), merges/no further penalty; and Count 14 (RSP), twelve to twenty-four months of incarceration. N.T., 6/28/17, at 33-35. The trial court ordered the sentences at this docket number to be served consecutively to each other and consecutively to the sentences at trial court docket numbers CP-37-CR-0001073-2014 and CP-37-CR-0001075-2014. Id. at 35.

Trial court docket number CP-37-CR-0000902-2015: Count 1 (PWID), nine to eighteen months of incarceration; Count 2 (PWID), six to twelve months of incarceration; Count 3 (PWID), nine to eighteen months of incarceration; Count 4 (PWID), nine to eighteen months of incarceration; Count 5 (criminal use of a communication facility), no further penalty; Count 6 (criminal use of a communication facility), no further penalty; Count 7 (criminal use of a communication facility), no further penalty; Count 8 (criminal use of a communication facility), no further penalty; Count 9 (possession), merges/no further penalty; Count 10 (possession), merges/no further penalty; Count 11 (possession), merges/no further penalty; and Count

_____

[11] The trial court noted that Appellant was found not guilty on Count 11. N.T., 6/28/17, at 34.

12 (possession), merges/no further penalty. N.T., 6/28/17, at 35-37. The trial court ordered the sentences at this docket number to be served consecutively to each other and consecutively to the sentences at trial court docket numbers CP-37-CR-0001073-2014, CP-37-CR-0001075-2014, and CP-37-CR-0000512-2015. Id. at 37. This resulted in an aggregate sentence of eleven and one-half to twenty-three years of incarceration. However, the trial court stated that Appellant was eligible under the recidivism risk reduction incentive ("RRRI"), 61 Pa.C.S. § 4501-4512. Id. Thus, if Appellant complied with the terms of the RRRI, his minimum sentence could be reduced to nine years and seven months of incarceration. Amended Sentencing Order, 8/29/17, at ¶3. Moreover, the trial court stated that it reviewed Appellant's presentence investigation report, considered all relevant factors, provided its reasons for the sentences imposed, and concluded that consecutive sentences were appropriate. N.T., 6/28/17, at 31, 41; see also Sentencing Orders, 6/30/17, at 1, 2 (stating that there was an undue risk that during a period of probation or partial confinement that Appellant would reoffend and that a lesser sentence would depreciate the seriousness of Appellant's crimes).

Appellant concedes that the sentences were within the standard range of the Sentencing Guidelines. Appellant's Brief at 55.[12] However, Appellant

---

[12] We note that even Appellant's longest individual sentence of forty-two to eighty-four months of incarceration was in the standard range of the Sentencing Guidelines. 204 Pa. Code § 303.16(a).

asserts that he should have received a lesser sentence because his prior record score was only "one," and the quantity of controlled substances he possessed was minimal as were the number of sales. Id.

After review, it is evident that the duration of Appellant's aggregate sentence is due to the number of crimes combined with the trial court's directive that the sentences must be served consecutively. We reiterate, "[A] defendant may raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence[.]" Dodge, 77 A.3d at 1270 (emphasis added). As noted, Appellant was found guilty of twenty-eight separate crimes, many of which were felonies. N.T., 6/28/17, at 31-37. The trial court provided reasons for its sentences and imposed standard-range sentences on fourteen crimes, found that ten crimes merged for sentencing purposes, and imposed no further penalty on four counts of criminal use of a communication facility, each of which was graded as a third-degree felony. Id. at 31, 35-36, and 41. The aggregate sentence is due to the voluminous number of convictions and the consecutive nature of the sentences imposed. However, the imposition of consecutive, rather than concurrent sentences is within the sound discretion of the trial court. Commonwealth v. Moury, 992 A.2d 162, 171-172 (Pa. Super. 2010). Moreover, it is well settled that a defendant is not entitled to a "volume discount" for his crimes by having his

sentences run concurrently. Commonwealth v. Hoag, 665 A.2d 1212, 1214 (Pa. Super. 1995). Under the circumstances presented in the instant case, we cannot conclude that Appellant's aggregate sentence is unreasonable and excessive. Accordingly, we find no abuse of discretion in the sentence the trial court imposed.

For the reasons set forth above, we conclude that Appellant is entitled to no relief. Therefore, we affirm the judgments of sentence.

Judgments of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/23/2020